George C. KOSMYNA, Plaintiff,

v.

BANKERS LIFE AND CASUALTY
COMPANY, Defendant.

Civ. A. No. 82–73052.

United States District Court,
E.D. Michigan, S.D.

Nov. 2, 1982.

David B. Grant, Southfield, Mich., for plaintiff.

Arthur M. Hoffeins, Detroit, Mich., for defendant.

## OPINION

FEIKENS, Chief Judge.

Plaintiff originally brought this action in Oakland County Circuit Court alleging defendant failed to pay benefits due under the terms of "an accident income policy" it issued through plaintiff's employer. Defendant timely petitioned this Court for removal. Plaintiff now moves to remand to Circuit Court. Defendant alleges jurisdiction is proper under 28 U.S.C. § 1332 because plaintiff is a citizen of Michigan and defendant is an Illinois corporation with its principal place of business in Illinois. Plaintiff contends that the language of the proviso to 28 U.S.C. § 1332(c), which states:

> *Provided further,* that in any direct action against the insurer of a policy or contract of liability insurance, whether incorporated or unincorporated, to which action the insured is not joined as a party-defendant, such insurer shall be deemed a citizen of the State of which the insured is a citizen, as well as of any State by which the insurer has been incorporated and of the State where it has its principal place of business,

requires that defendant be considered a citizen of Michigan. Thus, he argues, diversity is lacking.

The critical question is whether the policy is a "policy or contract of liability insurance" within the meaning of the statute.[1]

---

1. The "direct action" requirement has been loosened somewhat from its original intent to apply only to actions brought against a tortfeasor's insurer. *See* Senate Rep. No. 1308,

The term "liability insurance" is applied to contracts which provide for indemnity against liability.... Liability insurance is that form of insurance by which the insured is indemnified against loss or liability on account of bodily injuries sustained by others, ... or in a broader sense, against loss or liability on account of injuries to property.... A policy of liability insurance is a policy that indemnifies against the condition of becoming liable.... In *Twin City Fire Ins. Co. v. Wilkerson,* [247 F.Supp. 766, 767 (E.D. Tenn.1965), the Court construed] the term "liability insurance" as used in 28 U.S.C. § 1332(c), and said this:

> Although the question is not wholly without doubt, ... the term "liability insurance" has over the years come to be accepted in the Courts as meaning an indemnity agreement which protects the insured against his liability to others, and ... it was this meaning that the Senate had in mind in considering the amendment.

*Aetna Casualty & Surety Ins. Co. v. Greene,* 606 F.2d 123, 126 (6th Cir.1979), *quoting with approval, Vines v. United States Fidelity & Guaranty Co.,* 267 F.Supp. 436, 437 (E.D.Tenn.1967). In other words, liability insurance obligates the insurer to pay if the insured becomes liable to a third person.

■ States occasionally replace traditional tort law with other systems for providing compensation to accident victims. "Congress, when it used the terms 'direct action' and 'liability insurance' in the amendment to § 1332(c) did not intend the amendment to apply only to traditional tort claims." *Aetna Casualty,* 606 F.2d at 126. Thus, it is the law in this Circuit that claims under workers' disability compensation and no-fault automobile insurance statutes (which eliminate or reduce tort liability) fall within the meaning of the proviso to § 1332(c). *Id.; Ford Motor Co. v. Insurance Co. of N. Am.,* 669 F.2d 421 (6th Cir.1982).

■ Arguing that the instant case falls within the proviso to § 1332(c), plaintiff relies on *Tyson v. Connecticut General Life Ins. Co.,* 495 F.Supp. 240 (E.D.Mich.1980). Plaintiff's reliance on *Tyson* is proper; its factual situation is indistinguishable from the case at bar. However, as explained below, I decline to follow *Tyson* because I believe it was wrongly decided.

After discussing the law detailed above, *Tyson* argues that because Tyson's employer contractually agreed to provide her with disability insurance protection,

> the employer has created a liability to act in accordance with that contract that is enforceable in law. Contract law creates an obligation to provide disability protection binding on the employer. The insurance agreement is, in turn, an "agreement which protects the insured against his liability to others."

*Id.* at 242, *quoting Aetna Casualty,* 606 F.2d at 126. However, this analysis misses the point.

Under the terms of a disability income policy, the insured is not the employer, but the employee. The insured, contrary to the assertion in *Tyson,* is not protected against incurring liability to others. The insured employee is merely protected against loss of income.

In addition, the employer discharges his obligation to the employee by arranging for an insurance company to provide coverage. If it fails to provide a policy, the employee may sue the employer for breach of contract, whether or not he is injured. If the insurer improperly fails to pay a claim, the injured employee has no action against the employer, because the employer fulfilled its obligation by purchasing the insurance coverage. If the employer had purchased an insurance policy which by its terms promised to indemnify the employer against an action for breach of contract, *that* would be a liability policy.

88th Cong., 2d Sess., *reprinted in* 1964 U.S. Code Cong. & Ad.News 2778.' Now a direct action statute is not required; any action brought directly against an insurer is enough. *E.g., Ford Motor Co. v. Insurance Co. of N.*

*Am.,* 669 F.2d 421, 425 (6th Cir.1982). Because I find this case does not involve a contract for liability insurance, I do not reach the direct action question.

It should be noted that in *Ford Motor Co.,* 669 F.2d at 425, the United States Court of Appeals for the Sixth Circuit mentions *Tyson* during its discussion of the impact of Michigan's no-fault law, first properly stating the gist of the holding in *Tyson,* stating it:

> acknowledged the original purpose of the 1964 amendment to § 1332(c) but concluded it should be applied to cases other than those to which it was particularly addressed. The *Tyson* court found that "direct action" includes an action in contract as well as in tort.

In the next paragraph the Court in *Ford Motor Co.* concludes that *Tyson* contains "the correct view of the applicability of the 1964 amendment to actions under the Michigan no-fault act." It does. *Tyson* does not, however, contain the correct view of the applicability of the proviso to the instant situation, or to the one it dealt with.

Accordingly, plaintiff's "Motion to Remand Back to Circuit Court" is denied.